## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>STRYDER DANE KEO,<br><br>　　　Defendant. | Case No. 22-40061-HLT |

## MEMORANDUM AND ORDER

This matter comes before the court on Defendant Stryder Dane Keo's Motion to Reopen Detention Hearing or Alternatively for Temporary Release. ECF No. 24. Defendant moves under two provisions of the Bail Reform Act, 18 U.S.C. § 3142(f)(2), or alternatively, 18 U.S.C. § 3142(i). *Id.* at 1, 10, 19. The Government opposes the Motion. ECF No. 27. The Court provided Defendant with a deadline by which to file a reply brief, and no reply brief was filed.

For the reasons explained below, the Motion is denied.

## I.    BACKGROUND

On September 14, 2022, a grand jury returned a one-count indictment, charging Defendant with second-degree murder in violation of 18 U.S.C. §§ 1111 and 1153. ECF No. 1. The Government moved for detention, ECF No. 3, and U.S. Probation recommended detention in the Pretrial Services Report because no condition or combination of conditions can reasonably assure the safety of the community.

On September 19, 2022, the Court held a detention hearing and ordered Defendant detained pending trial pursuant to 18 U.S.C. §§ 3142(e) and (i). ECF Nos. 9, 10. The Court found by clear and convincing evidence that no condition or combination of conditions would

reasonably assure the safety of any other person or the community.  ECF No. 10 at 1.  In making

that finding, the Court considered the evidence presented during the detention hearing and

information contained in the Pretrial Services Report.

Specifically, the Court considered the statutory factors set out in 18 U.S.C. § 3142(g).  As

to the nature and circumstance of the offense charged, the Court noted Defendant was charged

with second-degree murder for the alleged shooting of an individual with a firearm, an offense

carrying with it the potential for life in prison.  *Id.*  The Court also found that the record indicated

that the Government had a strong case against the Defendant, including multiple eyewitnesses

who saw Defendant fire the gun multiple times at the victim from close range.  *Id.* at 2.

In considering Defendant's history and characteristics, the Court considered Defendant's

prior criminal offenses, which did include convictions for battery, disorderly conduct, and

obstructing the legal process.  *Id.*  Although these convictions were not recent, the Court found

that they indicated a prior history of making rash, reckless, and/or impulsive criminal decisions.

*Id.*  As in explained in detail on the record and as memorialized in the detention order:

> While many of the factors above weigh in Defendant's favor, the
> primary bases for this detention order are the alleged crime and the
> allegations underlying this crime.  As stated by the Government at
> the detention hearing, there are multiple witnesses who watched
> Defendant shoot a firearm multiple times at the victim from close
> range. The gunshots killed the victim and one of the bullets is
> alleged to have ricocheted and injured another individual in
> proximity. The shooting occurred at approximately 7:30 a.m.
> following an all-night party. The gun at issue is not alleged to
> belong to Defendant, but Defendant allegedly had the gun with
> him through the night/morning at a gathering in which attendees
> were intoxicated and in which there was at least one alleged
> incident involving attendees at this gathering.
>
> At the hearing, the Government contended that the victim was
> unarmed at the time he was shot multiple times from close range.
> The Government contends that tensions are extremely high in the
> community in which Defendant wishes to return. At the hearing,

the Government stressed that these tensions between Defendant and the victim's family continue and that these tensions may have been a reason, at least in part, for the shooting. The Government also stated that the firearm used in the alleged murder is still missing.

If released, Defendant poses a serious risk of danger to the community, particularly since the gun he used to shoot the victim remains at large and the tensions that may have precipitated the shooting remain. The shooting of an unarmed victim is a very serious crime and Defendant is alleged to have discharged a firearm in a way that not only killed one individual, but injured another who just happened to be nearby. There are no conditions or combination of conditions that will reasonably assure the safety of any other person and the community.

*Id.* at 2-3.  The Court ordered Defendant detained pending trial.  *Id.* at 3.

On September 12, 2023, Defendant filed this Motion, seeking release under two provisions of the Bail Reform Act.  ECF No. 24.  First, Defendant seeks to reopen his detention hearing pursuant to 18 U.S.C. § 3142(f)(2) because he contends there are two categories of new information that would have a material bearing on the issue of detention.  The first category of purported new information is Defendant's legal claim of self-defense and the assertion that the "Court did not consider any evidence of Mr. Keo's claim of self-defense at the time of the original hearing" because that information had not been produced in discovery yet.  *Id.* at 4.

The second category of new information relates to Defendant's conditions of confinement.  *Id.* at 5.  According to Defendant, after the Court ordered Defendant detained, he was placed in a special housing unit ("SHU") at USP Leavenworth as part of the normal processing of new detainees.  *Id.*  The Motion states the SHU is not solitary confinement but restrictive housing, which involves removal of the inmate from the general population and placement in a locked room or cell, with or without a roommate, where the inmate spends up to 22 hours or more per day.  *Id.* at 8.  Defendant contends that the conditions of his confinement in

the SHU are so poor, as detailed in the Motion, that they rise to the level of constitutional violations. *Id.* at 8, 10-19.

Defendant has remained housed in the SHU per prison policy because officials at USP Leavenworth contend Defendant poses a potential security risk because Defendant personally knows a staff member and Defendant has interacted with this staff member and/or the staff member's family members. *See id*; ECF No. 27 at 3. In a February 21, 2023 letter to defense counsel, the warden from USP Leavenworth states:

> Upon his arrival to USP Leavenworth Mr. Keo was identified by a staff member as knowing him personally, as well as Mr. Keo having personal encounters with this individual's family members. In these situations, it is standard practice of the Bureau of Prisons to transfer inmates to another facility in order to alleviate potential allegations of a conflict of interest or security concerns that could occur based on an inmate/staff previous relationship. As you are aware Mr. Keo is a USM inmate being housed at USP Leavenworth; therefore, a request to transfer him to another facility was made with the USM office upon his placement in SHU. To-date the USM have been unable to identify another appropriate facility placement.

ECF No. 24-1 at 1.

According to the Motion, one of the reasons Defendant remains at USP Leavenworth is because of Defendant's medical condition. ECF No. 24 at 5. Defendant is undergoing treatment for acute lymphoblastic leukemia at the University of Kansas Medical Center, which is near USP Leavenworth. *Id.* at 3, 5. The Motion states that according to the U.S. Marshal, USP Leavenworth is the "only facility . . . under contract in the District of Kansas that has the medical capability to deal with Mr. Keo's medical condition. It was also the facility closest to Mr. Keo's cancer doctors at the University of Kansas Medical Center." *Id.* at 5.

Alternatively, Defendant seeks release under 18 U.S.C. § 3142(i), arguing that his conditions of confinement both restrict his ability to help prepare his defense and constitute a

compelling reason justifying temporary release.  *Id.* at 19-22.  Defendant argues that he needs time out of the SHU to recover from the strain on his mental health, which could affect him at trial.  *Id.* at 21.  He also notes that he has restricted access to discovery.  *Id.*

The Government opposes the Motion and argues that Defendant has not carried his burden to reopen the detention hearing under § 3142(f)(2) or to justify temporary release under § 3142(i).  ECF No. 27.  The Court addresses these arguments below, beginning with Defendant's request to reopen the detention hearing under § 3142(f)(2) before turning to Defendant's alternate request for temporary release under § 3142(i).

## II.   REOPENING A DETENTION HEARING PURSUANT TO 18 U.S.C. § 3142(f)(2)

Under 18 U.S.C. § 3142(f)(2), "[a]fter the initial detention decision is made, the district court may reopen the detention hearing if it finds that (1) new information exists that was unknown to the movant at the time of the initial detention hearing; and (2) the new information has a material bearing on the issue of whether there are conditions of release that will reasonably assure a defendant's appearance at trial and the safety of the community."  *United States v. Dermen*, 800 F. App'x 665, 668 (10th Cir. 2020) (citing § 3142(f)(2)).  Reconsideration is permissible "only when there is new information that would materially influence the judgment about whether there are conditions of release that will reasonably assure that the defendant will not flee and will not harm any other person or the community."  *United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003).  The "new information" provision of this statute "has been interpreted strictly so as to deny a reopening where the evidence relied upon was available at the initial detention hearing."  *United States v. Schneider*, No. 07-10234-01-MLB, 2008 WL 11396795, at *4 (D. Kan. Apr. 21, 2008).

Defendant argues that the Court should reopen the detention hearing based on (1) his claim of self-defense; and (2) because his conditions of confinement rise to the level of ongoing constitutional violations. For the reasons explained below, neither circumstance constitutes a proper basis to reopen the detention hearing under § 3142(f)(2).

### A.     Defendant's Claim of Self-Defense

As to Defendant's claim of self-defense, the Court does not find that this is new information unknown to Defendant at the time of the hearing. Even if this were new information, this information does not have a material bearing on the issue of whether the Court can fashion conditions of release that would reasonably assure the safety of any other person or the community.

*First*, Defendant's claim of self-defense was known at the time of the original detention hearing and was discussed during that hearing. Counsel for Defendant acknowledged that it was undisputed that Defendant killed the victim, but he argued at the detention hearing that the Government's arguments in favor of detention ignored any possible defenses or justifications for the shooting, specifically including self-defense. Defendant's claim of self-defense is based on underlying facts that were known to Defendant at the time of the original hearing because this defense rests on events Defendant directly witnessed, Defendant's own actions and Defendant's reasonable belief at the time the events occurred. *See, e.g.,* Tenth Circuit Criminal Pattern Jury Instructions, No. 1.28 (2021 ed.) (setting forth instructions for self-defense or defense of another). Although Defendant argues that counsel had not yet received discovery or interviewed witnesses at the time of his detention hearing, he concedes he was aware of the self-defense claim. ECF No. 24 at 2 ("At the time of the original hearing, Mr. Keo's counsel was only aware

of a possible claim of self-defense, but had not yet received the discovery or interviewed any witnesses.").

*Second,* Defendant does not specify what was learned through discovery that was unknown to or unanticipated by Defendant at the time of the original hearing. As the Government notes, Defendant *himself* would have known if he acted in self-defense, as opposed to relying on witnesses who may corroborate his knowledge of the events of the day. ECF No. 27 at 7. While Defendant states that "more than one [witness] will indicate that the victim was coming at Keo with the intention of fighting him," ECF No. 24 at 4, such testimony, presumably, only corroborates Defendant's own knowledge. Defendant does not point to any authority that supportive testimony that corroborates Defendant's own knowledge constitutes the type of new information that justifies reopening the issue of detention. *See, e.g., United States v. Wittenmyer*, No. 00-40024-14-SAC, 2001 WL 968406, at *3 (D. Kan. July 6, 2001) (citing cases that hold that "testimony of family and friends is not new evidence"). Because Defendant's argument about self-defense fails the new-information prong of the analysis, Defendant is not entitled to have his detention hearing reopened on this basis. *See United States v. Grant*, No. 1:20-CR-00058-WJM, 2020 WL 7640873, at *2 (D. Colo. Dec. 23, 2020) (in ruling on a motion to reopen a detention hearing, explaining that "a rule that would not discourage a party for failing to acquire readily available evidence for presentation the first time is a rule that encourages piecemeal presentations" and "[j]udicial efficiency is not served by such a practice.").

*Third*, even if the Court found that Defendant's claim of self-defense were new information unknown to Defendant at the time of the original hearing (which it does not), the defense does not have a material bearing on the issue of detention. While Defendant does not directly specify which of the factors set out in § 3142(g) he believes are implicated by this

defense, such a defense could be relevant to the Court's analysis of the § 3142(g) factors requiring the Court to consider "the nature and circumstances of the offense charged" and "the weight of the evidence against the person," among other things.

Defendant explains that unspecified evidence exists that the victim was the aggressor and had a history of violence. ECF No. 24 at 4. According to Defendant, the victim had consumed large amounts of alcohol and methamphetamine, and "more than one [witness] will indicate that the victim was coming at [Defendant] with the intention of fighting him." *Id.* The explanation of the defense and possible evidence supporting it does not alter the Court's original conclusion that it cannot fashion conditions of release that would reasonably assure the safety of any other person or the community.

As memorialized in the detention order, the Government contends Defendant shot the victim multiple times from close range, killing the unarmed victim. But Defendant fired his weapon in such a way that a bullet injured a bystander in the process. ECF No. 10 at 3. The order also noted tensions between Defendant's and the victim's families, which the Government alleges motivated the shooting. *Id.* Even if the victim came at Defendant with the intention of fighting him, as Defendant contends, firing a weapon multiple times with nearby bystanders present is extremely dangerous behavior. As stated in the Court's original detention order, there is a history of tension between Defendant's family and the victim's family, which the Government alleged at the detention hearing may be a reason for the shooting. The Government detailed that these tensions have only escalated since the shooting. During the all-night party that proceeded the shooting, Defendant walked around the party showing off a firearm that is not alleged to be his. The firearm used by Defendant in the shooting remains missing, ECF No. 10 at 3, which is a serious risk of danger Defendant does not address in his Motion.

In sum, even considering Defendant's claim of self-defense in the context of the §
3142(g) factors, the Court still cannot fashion conditions of release that would reasonably assure
the safety of any other person or the community.

### B.      Defendant's Conditions of Confinement

As to Defendant's second argument—that his conditions of confinement rise to the level
of constitutional violations that warrant reopening Defendant's detention hearing—the Court
finds that Defendant arguably satisfies the first prong of the § 3142(f)(2) analysis but not the
second prong.   Because Defendant's conditions of confinement concern circumstances and
events occurring after the detention hearing, this constitutes new information unknown to
Defendant at the time of the initial detention hearing.  However, this is not information that has a
material bearing on the issue of detention.

Defendant devotes most of his Motion explaining why his conditions of confinement rise
to the level of violations of his constitutional rights, but these cases arise in the context of civil
litigation, and Defendant has not explained how any of them bear on the factors the Court is
required to consider when determining whether to detain.  Indeed, Defendant does not cite any
case in which a defendant's conditions of confinement constitute a basis for reopening the issue
of detention under § 3142(f)—as opposed to an issue considered in civil litigation or, as
discussed below, in limited circumstances under § 3142(i).  Instead, Defendant relies on cases
that arise outside of the context of a motion to reopen a detention hearing in a criminal case
under § 3142(f)(2).[1]   As one court observed, "[w]hile significantly adverse conditions of

---

[1]        *See Farmer v. Brennan*, 511 U.S. 825, 829, 114 S. Ct. 1970, 1974, 128 L. Ed. 2d
811 (1994) (addressing a claim under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S.
388 (1971)); *Whitley v. Albers*, 475 U.S. 312, 317 (1986) (addressing a 42 U.S.C. § 1983 case);
*Bell v. Wolfish*, 441 U.S. 520, 537 (1979) (addressing the constitutionality of certain conditions
of confinement of inmates in the context of an initial petition for a writ of habeas corpus, which

confinement may give rise to a civil rights claim under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), they have no bearing on the Court's consideration of whether Defendant is likely to flee or pose a danger to the community if he were released." *United States v. Gustafson*, No. CR 14-27-M-DLC, 2014 WL 3778994, at *2 (D. Mont. July 31, 2014) (ruling on a motion to reopen a detention hearing based on adverse conditions suffered by the defendant while placed in segregated custody); *see also United States v. Smith*, No. CR421CV00002BJBHBB8, 2021 WL 4130051, at *2 (W.D. Ky. Sept. 9, 2021) (reaching the same conclusion on a motion to reopen a detention hearing under § 3142(f)); *United States v. Keller,* 2008 WL 3085199, *3 (D. Mass. 2008) ("[A]n inmate's conditions of confinement are immaterial to the issue of whether he is a danger to the community and/or risk of flight.").

A magistrate judge in this district reached a similar conclusion when considering a motion to reopen a detention hearing based on a defendant's Covid-19 risk. *See United States v. Clark*, 448 F. Supp. 3d 1152, 1156 (D. Kan. 2020). In *Clark*, the court explained the limitations of a motion to reopen a detention hearing under § 3142(f)(2), in that "[t]he risk of harm *to the defendant* does not usually bear on this analysis." *Id.* (emphasis in original).

In considering the issue of detention, the Court must determine whether defendant poses a flight risk or a danger, considering the statutory factors set out in § 3142(g). Defendant argues that had the Court known that Defendant would remain confined in the SHU, it "may have reached a different conclusion" regarding detention. ECF No. 24 at 16. But Defendant does not point to any specific § 3142(g) factor implicated by his conditions of confinement or make any

---

ultimately was certified as a class action); *Honeycutt v. Ringgold*, 399 F. App'x 325, 326 (10th Cir. 2010) (addressing a § 1983 case); *Peoples v. CCA Det. Centers*, 422 F.3d 1090, 1093 (10th Cir. 2005) (addressing *Bivens* claims), *opinion vacated in part on re'g en banc,* 449 F.3d 1097 (10th Cir. 2006); *Morris v. Zefferi*, 601 F.3d 805, 807 (8th Cir. 2010) (addressing § 1983 claims).

argument explaining how his conditions of confinement bear on the ultimate basis for his detention—that the Court cannot fashion conditions of release that would reasonably assure the safety of any other person or the community.  While the Court is sympathetic to the issues raised in the Motion, it does not impact the original conclusion that "[i]f released, Defendant poses a serious risk of danger to the community[.]"  ECF No. 10 at 3.[2]

Even if Defendant had explained how his conditions of confinement bear on any of the statutory factors the Court is required to consider pursuant to § 3142(g), the record is far too unspecific for the Court to reach any conclusions regarding Defendant's conditions of confinement.  For example, in one portion of the Motion, Defendant explains the SHU is segregated housing but "[n]ot all segregation is truly 'solitary[.]'"  ECF No. 24 at 7.  Nevertheless, the Motion goes on to characterize Defendant's housing as "solitary confinement" and to make arguments concerning the effects of solitary confinement.  *Id.* at 13, 20.

Overall, there are few specific details about Defendant's daily life.  Defendant explains a sewer backed up and flooded his cell, and he contends he was not provided with sufficient cleaning supplies, posing a danger to his health.  *Id.* at 8-9.  That issue, however, does not appear to be ongoing.  He also claims a guard punched him in the face but that the guard's write-up

---

[2]        As noted in the detention order, Defendant's criminal history indicated "a prior history of making rash, reckless and/or impulsive criminal decisions."  ECF No. 10 at 2.  Among other things, Defendant notes the "well-documented" psychological effects of solitary confinement on mental health, including "problems with impulse control."  ECF No. 24 at 20. Defendant does not directly claim that he is actually experiencing these psychological effects—instead he notes only generalized complaints of "mental fatigue and anxiety."  *Id.* at 8. But if he is, § 3142(g)(3)(A) instructs the Court to consider Defendant's mental health and mental health challenges, including impulse-control issues that would support the Court's original conclusion of his dangerousness, not weigh in favor of release.

blames Defendant. *Id.* at 9. He states that the incident is currently under investigation by the Federal Bureau of Prisons ("BOP") and states that he was denied medical treatment. *Id.*[3]

Defendant lists other purported limitations but provides even fewer details about these limitations. He claims that his canteen privileges have been limited in an unspecified way, ECF No. 24 at 14, but does not address the Warden's letter, which states that Defendant has purchased $648.90 worth of items from the commissary. ECF No. 24-1 at 1. Defendant claims his telephone privileges have been limited, ECF No. 24 at 14, but does not specify how or when. The Warden's letter again addresses how Defendant can make legal calls, ECF No. 24-1 at 1, but Defendant's Motion does not explain why this procedure is inadequate, inappropriate or has not been followed.

Again, the Motion contains few concrete details regarding any of these alleged incidents. The Court simply cannot determine Defendant's conditions of confinement on this record, much less conclude that they would rise to the level of constitutional violations. For these reasons, the Court denies Defendant's request to reopen his detention hearing under § 3142(f). *See Gustafson*, 2014 WL 3778994, at *2 (D. Mont. July 31, 2014) ("The district court has discretion in determining whether a detention hearing should be reopened, and it may decline to reopen a hearing if the purported new information 'is not sufficiently material to the issues of dangerousness or flight risk[.]'" (citing *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989))). A motion to reopen detention pursuant to § 3142(f) is simply the wrong procedural and

---

[3] The Warden's letter provides additional details regarding this alleged incident, including that Defendant covered his cell window, refused to remove the covering to allow staff to conduct security checks, and "he attempted to use a mattress to barricade his cell door." ECF No. 24-1. Defendant's Motion does not directly address these factual allegations, other than to note he "denies the guard's version of events." ECF No. 24 at 9.

statutory mechanism by which to raise issues related to the conditions of Defendant's confinement.

## III.    TEMPORARY RELEASE PURSUANT TO 18 U.S.C. § 3142(i)

Alternatively, Defendant moves for temporary release under 18 U.S.C. § 3142(i).  *See United States v. Robertson*, 852 F. App'x 331, 336-37 (10th Cir. 2021) (explaining that § 3142(i) only applies after a defendant is detained pursuant to a detention order).  That subsection states in relevant part: "[t]he judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."

Courts grant relief under § 3142(i) "only sparingly."  *Clark*, 448 F. Supp. 3d at 1155.  Moreover, the "decision whether to release a defendant temporarily under § 3142(i) is, however, intertwined with the factors that the initial judicial officer considered at the defendant's detention hearing, because the risk of nonappearance and danger to the community are front and center in the judicial officer's mind as he or she decides how compelling the defendant's reason for temporary release is."  *United States v. Alderete*, 336 F.R.D. 240, 269 (D.N.M. 2020) (adding that "[t]hese factors never go away."); *see also United States v. Parks*, No. 18-CR-251-GKF-1, 2023 WL 2598694, at *4 (N.D. Okla. Mar. 22, 2023) (same), *appeal dismissed,* No. 18-CR-251-GKF, 2023 WL 3111698 (N.D. Okla. Apr. 26, 2023*), appeal dismissed as moot*, No. 23-5051, 2023 WL 5091174 (10th Cir. Aug. 9, 2023).  "A defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i)." *Clark*, 448 F. Supp. 3d at 1155.

In this case, Defendant contends that release is necessary both so he can prepare for trial and because he requires time out of the SHU to recover from the mental health strain caused by

being in the SHU for a year.  ECF No. 24 at 20.  For the reasons explained below, the Court finds that Defendant has not met his burden of establishing that temporary release is either necessary for the preparation of Defendant's defense or necessary because of another compelling reason.

### A.       Necessary for Preparation of Defendant's Defense

As the Tenth Circuit has stated generally, the constitutional right of access requires prisons to provide "prisoners with adequate law libraries or adequate assistance from persons trained in the law," and "detainees are entitled to meaningful, but not total or unlimited, access to the courts."  *Peoples v. CCA Det. Centers*, 422 F.3d 1090, 1107 (10th Cir. 2005), *opinion vacated in part on reh'g en banc,* 449 F.3d 1097 (10th Cir. 2006) (internal citations and quotation marks omitted).  "[A]n inmate's contentions of deprivation of access to courts must show actual injury, not mere deprivation, as a constitutional prerequisite to bringing a claim.  *Id.* (internal citations and quotation marks omitted).

Before the Covid pandemic, most courts addressing a motion for temporary release under § 3142(i) did so in the context of evaluating the necessity of a defendant participating in the preparation of their defense.  *See Clark*, 448 F. Supp. 3d at 1155.  There is limited authority addressing what rises to the level of necessity, but it must be more than convenience for the defendant and his attorneys.  *See generally United States v. Dupree*, 833 F. Supp. 2d 241, 248 (E.D.N.Y. 2011).  Although the Tenth Circuit has not articulated a definitive test, some courts evaluating whether temporary release is "necessary" for preparation of the person's defense under § 3142(i) have considered the "(1) time and opportunity the defendant has to prepare for the trial and to participate in his defense; (2) the complexity of the case and volume of

information; and (3) expense and inconvenience associated with preparing while incarcerated." *Alderete*, 336 F.R.D. at 267 (collecting cases).

Ultimately, the reasons underlying the original detention order remain a consideration in evaluating a defendant's motion for temporary release based on necessity for the preparation of a defense.  The "decision whether to release a defendant temporarily under § 3142(i) is, however, intertwined with the factors that the initial judicial officer considered at the defendant's detention hearing, because the risk of nonappearance and danger to the community are front and center in the judicial officer's mind as he or she decides how compelling the defendant's reason for temporary release is."  *Alderete*, 336 F.R.D. at 269; *see also United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (evaluating whether defendant's release was necessary for the preparation of his defense and explaining that "the facts surrounding the underlying reasons for the defendant's detention are relevant to the analysis.").

As discussed below, Defendant's arguments concerning the preparation of his defense are far too generalized to support temporary release under§ 3142(i).

### 1.    Time and Opportunity

As far as the Court can discern, Defendant alleges the following limitations regarding his time and opportunity to prepare for his trial: restricted access to discovery (although Defendant does not elaborate about the nature of the alleged restricted access or what he contends he has not received); a restricted ability to prepare for trial (again, without further elaboration); and because Defendant may testify at trial, his ability to testify coherently and unaffected by anxiety or mental fatigue is critical.  ECF No. 24 at 20-21.  The most specific factual allegation is that the "Prison has allowed him to view the discovery, but not the court-ordered 6 hours a week." *Id.* at 8.

Arguably, such issues with the appropriate factual support could bear on Defendant's time and opportunity to prepare for trial.  But as the Government correctly notes, Defendant has not explained how his conditions of confinement impact his ability to communicate with counsel or assist counsel in mounting a defense.  ECF No. 27 at 6-7.  He does not allege that his attorney cannot meet with him in person, by phone and/or by video.  While he alleges he has not been given the opportunity to review discovery for a full six hours a week as ordered by the District Court, ECF No. 18, there are no factual details provided.  He does not describe whether this occurs every week, whether he is seconds, minutes or hours under that allotted six hours a week, or why the time he has received is not meaningful or sufficient.

Defendant cites to *United States v. Stephens*, 447 F. Supp. 3d 63 (S.D.N.Y. 2020) for the proposition that temporary release can be appropriate when the Court determines that release is necessary to prepare for trial.  But the unique facts in *Stephens* underscore the insufficiency of Defendant's arguments here.  In *Stephens,* the Government did not contest factual allegations that because of the ongoing Covid pandemic, the Bureau of Prisons had "suspend[ed] all visits— including legal visits" between the defendant and his counsel and that BOP refused to allow any legal calls between counsel and the defendant.  *Stephens*, 447 F. Supp. 3d at 67.[4]  There are no analogous factual allegations here.  Defendant does not allege a single instance in which he has been unable to communicate with his attorney, either in person or via telephone.  He has access to the discovery from his case, and the Warden's letter states that on the day he requested access to the law library in February 2023, he was provided access that same day.  ECF No. 24-1.

---

[4]     *Stephens* additionally found that discovery produced after the detention hearing materially changed the strength of the Government's case against the defendant, namely that the officer who identified the defendant as holding the gun initially identified an entirely different person as holding the gun.  *Id.* at 64-65.

There are simply no factual allegations similar to those in *Stephens* demonstrating that Defendant is without the opportunity to prepare for the trial and to participate in his defense.

With regard to the time to prepare for trial, the Court has granted multiple continuances requested by Defendant. *See, e.g.,* ECF Nos. 12, 14, 16, 20. The original Indictment was filed on September 14, 2022. ECF No. 1. Trial is now set for December 4, 2023, ECF No. 23, meaning that Defendant has had more than a full year to prepare for trial. Nowhere in Defendant's Motion does he allege that this time has been insufficient to prepare for trial. *See United States v. Ramadan*, No. 20-1450, 2020 WL 5758015, at *3 (6th Cir. Sept. 22, 2020) ("Temporary release is not warranted when a defendant has had ample time to prepare his defense, even given the practical limitations on his access to telephones and the Attorney Conference Room." (internal citations and quotation omitted)).

Defendant could have addressed the Government's arguments over a lack of factual support for his broad allegations of an inability to prepare a defense in a reply brief, but Defendant did not file a reply. "Defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i)," *Clark*, 448 F. Supp. 3d at 1155, and he has failed to meet this burden with regard to his allegations of insufficient time or opportunity to prepare a defense.

### 2.   Complexity and Volume of Information

Defendant's Motion does not contend that this is a complex case. *See generally* ECF No. 24. This is not a multi-count, multi-defendant case. Although this case involves a very serious charge with serious penalties, it is not overly complex in that it concerns discrete events during a short period of time to which there were eyewitnesses. As it appears that Defendant will rely on self-defense, while there is certainly eyewitness testimony to review, this is not a document-

intensive case.  But even if it were, complexity alone is not enough to support temporary release. *See, e.g., United States v. Petters*, No. CR. 08-364(RHK/AJB), 2009 WL 205188, at *2 (D. Minn. Jan. 28, 2009) ("While this case may, in fact, be complicated and require Defendant to review hundreds if not thousands of documents and meet with his lawyers for dozens of hours, that fact, standing alone, simply does not justify Defendant's release. . . .  Indeed, accepting such an argument would mean that the more complicated the crime, the more likely a defendant should be released prior to trial.  This is clearly an absurd result.").

### 3.     Expense and Inconvenience

As for expenses or unique inconvenience, Defendant provides no concrete examples of any unique expense or inconvenience associated with preparing his case while he is detained. While Defendant argues that his mental health has deteriorated while incarcerated, that argument lacks any factual specificity, and similar allegations would be true of nearly all individuals confined pretrial.

In sum, the Court cannot say that Defendant has met his burden of alleging circumstances that support a finding that Defendant's release is necessary for the preparation of his defense. *See, e.g., United States v. Rodriguez*, No. 12-CR-83S, 2014 WL 4094561, at *9 (W.D.N.Y. Aug. 18, 2014) (denying release pursuant to 3142(i) because any finding that defendant was unable to participate in his own defense "would require too much speculation" by the court because defendant failed to provide specific factual support for the claimed inability to participate).  Even if Defendant had provided the factual support, the facts underlying the reasons for the original detention order remain an important consideration, and the danger Defendant poses if released simply precludes release.

### B.     Another Compelling Reason

Most courts recently addressing a motion for temporary release "for another compelling reason" have done so in the context of the Covid pandemic. *See, e.g., Clark*, 448 F. Supp. 3d at 1155; *see also United States v. McGowan*, No. 20-1617, 2020 WL 3867515, at *2 (6th Cir. July 8, 2020) (citing *Clark* with approval for the case-by-case factors set forth in the order). Prior to Covid, "[c]ourts have typically granted relief under § 3142(i) only 'sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries.'" *Clark*, 448 F. Supp. at 1155 (quoting *United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)). In the context of analyzing release for "another compelling reason" under § 3142(i), courts still consider the underlying reasons for the original detention order. *See Clark*, 448 F. Supp. 3d at 1157; *see also United States v. Jackson*, No. 15-40065-01-DDC, 2020 WL 7626539, at *1 (D. Kan. Dec. 22, 2020) ("The court fully understands Mr. Jackson's desire to grieve his grandfather alongside other family members. And in ordinary circumstances, attending a beloved family member's funeral would qualify as a compelling event. But the court must deny the motion because Mr. Jackson's own conduct renders him untrustworthy for temporary release.").

Section § 3142(i) is not an ideal vehicle by which to address Defendant's allegations concerning his conditions of confinement because, among other things, the remedy is temporarily releasing Defendant from custody altogether. As explained above, the original reasons for detention continue to remain a consideration under § 3142(i). As one court put it, "[t]hese factors never go away." *Alderete*, 336 F.R.D. at 269. Indeed, Defendant points to no case (nor could the Court locate one) in which a court temporarily released a defendant based on his conditions of confinement despite originally finding that it could not fashion conditions of release that could reasonably assure the safety of any other person or the community.

Prior to Covid, the rare successful motion for temporary release based on "another compelling reason" often alleged a material decline in a defendant's physical health, which could mitigate a previous finding of dangerousness when the defendant becomes too ill to commit crimes or engage in other dangerous activity.  But in this case, while Defendant has a serious health condition, he had that condition at the time he is alleged to have committed second degree murder.  The Court took that condition into account in making the original detention decision.  *See* ECF No. 10 at 2 (noting "Defendant is currently on disability due to his physical health.  He has a serious medical condition that requires on-going treatment.").  Defendant's need for ongoing medical care does not change the Court's original conclusion regarding his dangerousness.  *See Clark* 448 F. Supp. 3d at 1157 (considering the original grounds for detention in denying a motion for temporary release under § 3142(i), noting defendant was high risk and "[t]he need for pretrial detention is not even a close call"); *compare with Stephens*, 447 F. Supp. 3d at 66 (granting temporary release under § 3142(i) during the Covid pandemic and noting that the issue of whether defendant posed a danger to the community was "a close one" at the original detention hearing).  Again, to the extent that Defendant's mental health is deteriorating due to incarceration, that factor does not diminish the risk of danger posed by Defendant's release.

With regard to his conditions of confinement, just as in the § 3142(f) context, Defendant does not cite a single case in which a defendant's placement in the SHU is a basis for temporary release under § 3142(i).  Defendant does not address or distinguish cases from within the Circuit

and across the country that have found these types of issues are properly raised in civil litigation, not in a motion seeking to reopen the issue of detention.[5]

While the conditions alleged by Defendant are far from ideal, Defendant fails to persuade the Court that these conditions require his release when the Court continues to find that there are no conditions or combination of conditions that will reasonably assure the safety of the community if Defendant were temporarily released.  *See United States v. Bryant*, 827 F. App'x 122, 125 (2d Cir. 2020) ("We find no abuse of discretion in the district court's determination that Bryant's proffered reasons for temporary release were not sufficiently 'compelling' in light of the countervailing factors that led the district court to deny his motion for release on bond."); *accord Rodriguez*, 2014 WL 4094561, at *9 n.4 ("Having ordered Rodriguez detained twice already, the Court sees a tension between declaring someone a danger to the community but then releasing him anyway for logistical convenience.").

In sum, Defendant's conditions of confinement, considered in conjunction with the original reasons the Court detained Defendant, do not present a compelling reason to grant temporary release under § 3142(i).  Because Defendant failed to meet his burden under either § 3142(f) or § 3142(i), the Court denies this Motion.

---

[5]        *See, e.g., United States v. King*, No. 19-CR-257-WJM, 2020 WL 1890677, at *3 (D. Colo. Apr. 16, 2020) (denying a motion to reopen detention that was based in part on defendant spending his pretrial detention in the SHU, finding that "defendant presents no evidence that his conditions of confinement have interfered with his ability to consult with his attorney, privately and in-person.  Thus, he must pursue his grievances, if at all, through civil litigation, not in the guise of a review of his detention order."); *United States v. Arnaout*, No. 02 CR 892, 2002 WL 31744654, at *2 (N.D. Ill. Dec. 6, 2002) ("Arnaout fails to provide a valid basis for the court to modify the conditions of his confinement.  Absent any evidence that the conditions of confinement interfere with his right to counsel, Arnaout may only challenge his placement in administrative detention and transport under a three-man hold through a civil action.  Therefore, his motion is denied without prejudice to his right to file a separate civil action.").

**IT IS THEREFORE ORDERED** that Defendant's Motion to Reopen Detention Hearing or Alternatively for Temporary Release (ECF No. 24) is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 31, 2023, at Topeka, Kansas.

/s/ Rachel E. Schwartz
Rachel E. Schwartz
United States Magistrate Judge